UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 05-33035-DHW
                                                   Chapter 11
PIKNIK PRODUCTS COMPANY, INC.,

  Debtor.

ORDER ON MOTION FOR SUBSTANTIVE
CONSOLIDATION, FOR PRELIMINARY INJUNCTION,
AND OBJECTION TO SALE PROCEDURES

Before the court is the motion of Oasis General Foods ("Oasis") (Doc. #141). Oasis seeks an order substantively consolidating the estate of the debtor with that of a non-debtor, Brundidge Properties, LLC. Further, Oasis seeks to enjoin a sale of certain personal property of the debtor, Piknik Products Company, Inc. ("Piknik"), now scheduled for Monday, January 30, 2006, and objects to the procedures for the sale of that property.

A hearing on Oasis's motion was held on Friday, January 27, 2006. Present at the hearing were Von G. Memory, attorney for the debtor; Scott M. Speagle and G. Wade Hartley, Jr., attorneys for Oasis; Clark R. Hammond and Douglas Dow, attorneys for SOC Asset Acquisition Company, LLC, ("SOC"); Jason D. Woodard, attorney for Wachovia Bank, N.A. ("Wachovia"); Mark A. Franco, attorney for Brundidge Properties, LLC.; J. Rudy Freeman, attorney for the committee of unsecured creditors; David T. Cohen, attorney for Kellogg Company; and Michael Fritz, attorney for the United States Bankruptcy Administrator.

## Jurisdiction

The court's jurisdiction in this contested matter arises from 28 U.S.C. § 1334 and from the general order of the United States District Court for this district referring all title 11 matters to this court.

Further, because the issue here concerns the administration of the estate, particularly the sale of estate property, this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N) thereby extending the court's jurisdiction to the entry of a final order or judgment.

## Procedural Background and Factual Contentions

Piknik filed this chapter 11 case on September 29, 2005. At the time of the filing, the debtor operated its business from facilities located in Montgomery, Alabama and Brundidge, Alabama. Shortly after the filing, the debtor ceased operations at its Brundidge facility, and on December 31, 2005, closed its Montgomery facility, ceasing business operations altogether. Since that time, the debtor has pursued efforts in this court to self-liquidate.

On December 13, 2005, Piknik filed its initial motion to sell to SOC all of its personal property located in Brundidge (Doc.# 106). That motion brought objections from Oasis, an interested purchaser, and from the unsecured creditors' committee. Both of the objectors complained that the proposed sale to SOC was completely private and absent of any provision for accepting higher and better bids from other parties. Further, Oasis complained that it was unable to garner necessary information concerning not only the personalty being sold but also the realty where it is located. In short, Oasis argued that it was precluded from making a competing bid for the personal property based on the information then available to it.

Following a January 9, 2006, hearing on the debtor's motion to sell, the court denied the motion (Doc. #127, Order, January 10, 2006). The motion was denied because it did not permit competitive bidding.

On January 13, 2006, the debtor filed a second motion to sell the personal property located in Brundidge (Doc. #133). This motion contained provisions, *inter alia*, for competitive bids by other interested purchasers. That same day, the court, under the impression that the motion was consensual, entered an order approving the sale procedures and scheduling the sale for Monday, January 30, 2006 (Doc.

#135).

On January 20, 2006, Oasis filed the motion (Doc. #141) *sub judice* seeking to enjoin the sale, objecting to the sale procedures, and requesting substantive consolidation of the debtor's estate with that of Brundidge Properties, LLC., a non-debtor. In substance Oasis contends that the Brundidge realty, where the debtor's personal property is located, is owned by Brundidge Properties, LLC., and that Brundidge Properties, LLC. has entered into a confidential agreement to sell that realty to SOC.[1] As a result of that real estate sales agreement, Oasis contends that SOC will necessarily be the only bidder for the personal property that is not required to remove it from its current location. Hence, by avoiding the cost of removal, SOC enjoys an uneven playing field with respect to the purchase of the personalty.

Further, Oasis contends that Herman R. Loeb, Piknik's president and shareholder, is also a principal of Brundidge Properties, LLC. Oasis maintains that the overlapping interest of Piknik, Brundidge Properties, LLC., and Loeb demand that the Piknik and Brundidge Properties, LLC. be substantively consolidated. If these entities are consolidated, it follows that the Brundidge property, both real and personal, could be offered to interested buyers on an equal footing.

SOC and the debtor respond that there is no overlapping ownership interest. Counsel for Brundidge Properties, LLC. appeared at the hearing and represented to the court that Herman R. Loeb is not a principal or member of Brundidge Properties, LLC. Loeb is, however, a principal of a management company that manages the affairs of Brundidge Properties, LLC.

Further, they maintain that the debtor has never held an ownership interest in the Brundidge realty. The debtor's only interest in that property was its leasehold, which itself has terminated by

---

[1] Brundidge Properties, LLC. leased the Brundidge, Alabama realty to Piknik. Piknik has not assumed the lease, and pursuant to 11 U.S.C. § 365 (d)(4), the lease is deemed rejected by the debtor.

operation of law. Hence, SOC's contract to purchase the subject real estate is a private contract outside the scope of these proceedings and jurisdiction of this court.

Finally, Wachovia claims to hold a perfected security interest in the personal property that is the subject of this proposed sale. Although it is highly unlikely that the proceeds from the sale of the Brundidge personalty will pay Wachovia in full, it consents to the proposed sale under the current sale procedures.[2] Similarly, the unsecured creditors' committee supports the debtor's motion to sell.

## Conclusions

To obtain a preliminary injunction, the following four requirements must be met:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a showing that plaintiff will suffer irreparable injury if an injunction does not issue, (3) proof that the threatened injury to plaintiff outweighs any harm that might result to the defendants, and (4) a showing that the public interest will not be disserved by grant of a preliminary injunction.

*Snook v. Trust Company of Georgia Bank of Savannah, N.A.*, 909 F.2d 480, 483 (11th Cir. 1990). The preliminary injunction is an "extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Id.* The burden of persuasion for each element remains at all times on the movant. *Id.*

---

[2] Wachovia's claim is approximately $14,000,000 and SOC's initial bid for the personal property is approximately $600,000. Beyond this personal property, Wachovia, however, claims an interest in Piknik's Montgomery realty and personal property.

In selling estate assets, "the objective is to obtain the best price so as to assure the maximum distribution to creditors. This is accomplished, in part, by assuring that the marketing is full, fair and complete and that all prospective purchasers have a fair opportunity to participate in the process." *Siddiqui v. Gardner (In re Williamson)*, 327 B.R. 578, 581 (Bankr. E.D. Va. 2005).

Ideally, a sale of bankruptcy estate property is open to all interested purchasers on identical terms. Indeed, a same-term, public sale is the best means to ensure that the estate's value is maximized for the benefit of creditors.

Moreover, a chapter 11 debtor in possession, with certain exceptions not relevant here, performs the same functions as a trustee. 11 U.S.C. § 1107(a); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 200 n.3, 103 S. Ct. 2309 (1983). Therefore, a debtor in possession owes a fiduciary duty to the bankruptcy estate and ultimately to its creditors. That duty requires that the debtor approach the sale of its assets in a manner that will produce the highest and best return for the estate irrespective of the effect upon others, namely its principals.

Those tenets, however, are strained in the case at bar. Whether real or imagined, Loeb's relationship with Piknik and with Brundidge Properties, LLC. gives rise to at least the possibility of self-dealing. Despite the remonstrations of the debtor, SOC, and Brundidge Properties, LLC., a skeptic could suspect that the confidential real estate sale to SOC favored Brundidge Properties, LLC. and/or Loeb to the detriment of Piknik's bankruptcy estate. For example, a buyer may be willing to pay more for real estate than the property is otherwise worth if the buyer knows that its exclusive right to the realty will produce a competitive advantage elsewhere. Under such circumstances, interrelated principals could effectively influence how the purchase price for assets is allocated between affected entities.

While making these observations, the court is careful to point out that it is making no allegations of self-dealing or breach of fiduciary duty here. Instead, the court is merely pointing out the obvious, that

this sale procedure, possibly unavoidably so, gives rise to the possibility thereof.

If the court was convinced of actual self-dealing or breach of fiduciary duty, it would not hesitate to enjoin the sale. The mere possibility of self-dealing and breach of fiduciary duty, however, is not enough to halt the proposed sale. To prevail on a request for a preliminary injunction, the movant must prove a substantial likelihood of success on the merits – not a mere possibility. *Snook,* 909 F.2d at 483.

This result is particularly true in light of the positions taken by Piknik's creditors, both secured and unsecured. Wachovia, the creditor claiming a security interest in these assets, and the unsecured creditors' committee are in support of the proposed sale and its accompanying procedures. The interests of these creditors are best served by a sale which produces the largest return. That both sets of creditors support the sale is most persuasive to the court.

For these reasons, it is

ORDERED that the motion filed by Oasis General Foods for preliminary injunction and for substantive consolidation is DENIED and that its objection to the sale procedures is OVERRULED.

Done this the 29th day of January, 2006.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Von G. Memory, Attorney for Debtor
Scott M. Speagle and G. Wade Hartley, Attorneys for Oasis
Clark R. Hammond and Douglas Dow, Attorneys for SOC

Jason D. Woodard, Attorney for Wachovia Bank, N.A.
Mark A. Franco, Attorney for Brundidge Properties, LLC.
J. Rudy Freeman, Attorney for Creditors' Committee
David T. Cohen, Attorney for Kellogg Company
Michael Fritz, Attorney for Bankruptcy Administrator