# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                  Case No. 05-33035-DHW
                                                       Chapter 11
PIKNIK PRODUCTS COMPANY, INC.

    Debtor.

## MEMORANDUM OPINION

Piknik Properties, Inc. ("Properties") and Herman Loeb, Jr. ("Loeb") filed an objection to the debtor's sale of realty (Doc. #235). The objection was filed on May 1, 2006, after the sale was approved on April 14, 2006, following a scheduled auction.

The objection came on for hearing on May 9, 2006. Appearing at the hearing were Lee R. Benton for Properties and Loeb; Richard P. Carmody and Eric Kaupt for Hilco Montgomery, LLC ("Hilco"); Jason D. Woodard for Wachovia Bank; J. Rudy Freeman for the unsecured creditors' committee; Von G. Memory for the debtor; and Walter R. Byars, Jr. for the City of Montgomery, Alabama. Also appearing were Col. Peter Costello and Col. Tim Cashdollar, officers of the United States Air Force assigned to Maxwell Air Force Base whose duties include the base's physical plant and facilities.

## Jurisdiction

The court's jurisdiction in this matter is derived from 28 U.S.C. § 1334 and from the United States District Court for this district's general order referring title 11 matters to the Bankruptcy Court. Further, because this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N) and (O), the court's jurisdiction extends to the entry of a final order or judgment.

## Factual and Procedural Background

On March 3, 2006, the debtor, Piknik Products Company, Inc., filed

a motion (Doc. #191) seeking authority to sell by auction certain Montgomery, Alabama realty and seeking approval of procedures for the proposed sale.[1]  The motion was set for hearing on March 27, 2006. Prior to the hearing, two objections to the motion were filed — one by Crouch Supply Company (Doc. #209) and the other by Alabama Power Company (Doc. #210).

At the March 27, 2006, hearing, both of the objections were overruled without prejudice.  In each case, the debtor agreed to include provisos to the sale which were satisfactory to each of the objectors. Following the hearing, an order (Doc. #215) entered on April 3, 2006, approving the sale procedures, setting the auction on April 14, 2006, and setting a hearing on the afternoon of the auction to consider final approval of the sale.

At the April 14, 2006, hearing, the debtor appeared through counsel and reported the results of that morning's auction.  In summary, two bidders participated in the sale:  Hilco and Miss KC, LLC.  In accordance with the sale procedures, the properties were first offered for sale separately.  Under that approach the high bids were $3,500,000 for Alatex Road and $350,000 for Day Street.

Counsel also reported that, again in accordance with the approved sale procedures, both properties were then offered for sale together. Under this method, the $4,000,000 bid of Hilco was the highest.  Hence, because the sale of both properties together produced a greater sum than selling the properties separately, the debtor recommended that the combined sale to Hilco be approved.

No other objections to the sale were advanced.  The unsecured creditors' committee and the major secured creditor, Wachovia Bank, concurred in the sale to Hilco. Counsel for the debtor recommended the

---

[1] In particular, the debtor proposed to sell two noncontiguous properties. One is referred to as Alatex Road and the other is referred to as Day Street. The Day Street property comprises 3 parcels.

2

sale. Neither Properties nor Loeb were present at the morning auction or at the afternoon hearing to approve the sale. At the conclusion of the hearing, the court orally approved the sale to Hilco.

The debtor, unsecured creditors' committee, and Wachovia agreed to submit a consent order approving the sale. Before the order was submitted, Properties and Loeb filed the instant objection to the sale. The court will treat the objection as a motion to reconsider the sale.

Loeb is the president of both Properties and the debtor. Properties has a leasehold interest in the largest of the 3 parcels comprising the Day Street property which it subleases to the debtor. The debtor owns the smaller 2 parcels. Properties agreed to include its larger parcel for sale along with the debtor's two smaller parcels. Properties agreed to take the steps necessary to effect conveyance of the larger parcel to winning bidder.

Loeb signed the asset purchase agreement establishing Hilco as the stalking horse bidder in the amount of $3.5 million for the combined Alatex Road and Day Street properties. Properties and Loeb agreed to the sale because they were led to believe that a higher price would be obtained if the two properties were sold together. Loeb signed the asset purchase agreement on behalf of both the debtor and Properties.

The record owner of the largest parcel of the Day Street property is the Industrial Development Board of the City of Montgomery ("IDB"). Properties transferred the property to the IDB as part of a financing arrangement to enable the debtor to pay a lower rate of interest. IDB issued tax free bonds to lender Wachovia who received a mortgage on the property. Loeb guaranteed the mortgage to Wachovia. At the end of the lease term and upon retirement of the bonds, Properties has the right to repurchase the property from IDB for the nominal sum of $100. The debtor currently leases the parcel from Properties.

After the sale, Maxwell Air Force Base, which abuts the Day Street property, expressed interest in purchasing the Day Street property for $2

million. Maxwell did not receive notice of the auction. Maxwell desires to use the property for inspecting large vehicles prior to their entry onto the base. Maxwell is actively pursuing funding from the government. If the funds are obtained, Maxwell will seek approval from the government to purchase the property. The City of Montgomery appeared at the hearing to support Maxwell's attempts to purchase the property for purposes of national security.

## Contentions of Properties and Loeb

First, Properties and Loeb contend that the purchase price for the Day Street property is grossly unfair. If only $350,000 of the $4 million purchase price is allocated to the Day Street property, the Day Street property undersold by over $1.5 million.[2] Properties and Loeb are not asking to upset the sale of the Alatex Road property. They would like to "carve out" the Day Street property from the sale pending a determination whether Maxwell can obtain the necessary funding to purchase the property.

Second, Properties and Loeb contend that they were informed of at least four bidders in addition to Hilco who were interested in the properties. They were not informed, as the auction drew near, that only two bidders would attend the auction. Had they known, they would have either engaged in additional marketing efforts to protect their interests or attempted to remove the property from the sale prior to the auction. Properties and Loeb stop short, however, of alleging fraud or collusion by either the debtor or Hilco.

Third, Properties and Loeb contend that the inadequate price was the result of poor marketing by the debtor. The City of Montgomery and Maxwell Air Force Base did not receive notice of the auction and were unaware of the sale until after it occurred. The City of Montgomery is the record owner of the property, and Maxwell is an adjacent landowner.

---

[2] Properties and Loeb state that the Day Street property has been appraised for approximately $2.9 million as a going concern.

4

Therefore, Properties and Loeb contend that the property was not marketed to two of the most logical prospective purchasers.

### Contentions of Hilco

Hilco argues that, having participated in good faith in purchasing the property, 11 U.S.C. § 363(m) protects its reasonable expectations in retaining the property. Hilco alleges that the court has relatively narrow discretion to set the sale aside.

Hilco alleges that the disappointment of Properties and Loeb in the result of the auction is due to their own neglect. Loeb had a fiduciary duty as president of both the debtor and Properties to obtain the highest and best offer for the property. He agreed to sell the Day Street property in a joint sale with Alatex Road for $3.5 million to a stalking horse bidder. He did not appear at the hearing approving the sale procedures, the auction, or the hearing approving the sale. He waived the right to challenge the sale by signing the asset purchase agreement and agreeing to put title in the debtor to effectuate the sale. He is contractually obligated to consummate the sale.

Finally, Hilco contends that the sole party to receive any benefit (other than Wachovia) from upsetting the sale is Loeb himself who executed a guaranty agreement on the mortgage obligation to Wachovia. Maxwell will not benefit because it may still purchase the property if Hilco agrees, or Maxwell may have the right to condemn the property.

### Contentions of the Debtor and the Unsecured Creditors' Committee

The debtor appeared at the May 9, 2006, hearing as a "neutral party" and reported on the procedural steps culminating in the sale. The debtor did not support or oppose the objection to the sale.

Counsel for the unsecured creditors' committee also took no position on the motion. Because Wachovia is substantially "underwater,"

it appears that if the Day Street property is carved out of the sale and sold to Maxwell, the proceeds would inure solely to the benefit of Wachovia, even on the two smaller parcels owned by the debtor.

## Contentions of Wachovia Bank

Wachovia took a somewhat neutral position. Wachovia suggested that, with Hilco's consent, the sale of the Day Street property could be suspended long enough to determine whether Maxwell will be able to purchase the property. However, Hilco did not consent.

## Conclusions of Law

Relief from an order or judgment is obtained through Fed. R. Civ. Proc. 59 and 60.[3] Because the order approving the sale has not entered, the time periods governing reconsideration under these rules has not commenced. However, the order was effective when announced, and the court will consider whether grounds exist to set the order aside.[4]

The court has limited discretion to set aside an approved sale. The "court may vacate a prior order confirming a sale only in very limited circumstances in the exercise of its powers as a court of equity." In re WPRV-TV, Inc., 983 F.2d 336, 340 (1st Cir. 1993). Rule 60 allows judgments to be set aside for, inter alia, mistake, inadvertence, surprise, excusable neglect, fraud, misrepresentation, or any reason justifying relief from the order. Limited discretion is necessary because "[i]f parties are to be encouraged to bid at judicial sales, there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended." In re Webcor, Inc., 392 F.2d 893, 899 (7th Cir.

---

[3] Fed. R. Civ. Proc. 59 and 60 are made applicable to bankruptcy proceedings by Fed. R. Bankr. Proc. 9023 and 9024.

[4] An order is complete when announced orally by the court though not yet reduced to paper and entered on the court's docket. IBT Int'l, Inc. v. Northern (In re International Admin. Servs., Inc.), 408 F.3d 689 (11th Cir. 2005).

6

1968), cert. denied, 393 U.S. 837 (1968). "This policy of finality protects confirmed sales unless compelling equities outweigh the interests in finality."[5] WPRV-TV, 983 F.2d at 341.

For the following reasons, the court concludes that the sale should not be set aside.

First, there is no allegation that the court-approved procedures for conducting the sale were not followed. The auction was marketed and sale packages sent to 26 potential bidders. Although the failure to notice adjacent owners may have been imprudent from a marketing perspective, it did not violate the sales procedures.

Second, there is no allegation that either the debtor or Hilco engaged in fraud or collusion. 11 U.S.C. § 363(n) allows a trustee to avoid a sale if the price was controlled by an agreement among potential bidders. However, there is no such allegation here.

There is also no allegation that Hilco did not purchase the property in good faith. Hilco became involved in the purchase process in November 2005 and has expended resources verifying title, employing three different law firms, obtaining financing, negotiating and executing the asset purchase agreement, and attending and bidding at the auction for a price that exceeded its initial bid by $500,000.

Upsetting the sale at this point would be inequitable absent compelling grounds. Properties and Loeb allege that poor marketing and their lack of information concerning the number of bidders contributed to a low purchase price. However true this may be, Properties and Loeb were in a position to either know or control these factors. Properties voluntarily included its parcel for sale along with Alatex and voluntarily agreed to the stalking horse bid.

---

[5] 11 U.S.C. § 363(m) protects the validity of a good faith sale even against reversal on appeal unless the order approving the sale is stayed pending appeal.

Loeb had a fiduciary duty to the bankruptcy estate to sell the debtor's property in a manner that would achieve the highest and best bid. Loeb could have participated in the process but chose not to. It hardly seems equitable to allow them to renege at this point simply because the sale did not produce the dollars they anticipated. The court concludes that the grounds asserted by Properties and Loeb do not outweigh the policy interests in the finality of the sale.

In examining the equities, the court notes that none of the main parties in interest in this case are supporting reconsideration of the sale. Neither the debtor nor the unsecured creditors' committee supports disturbing the sale. The debtor characterized its position as "neutral." Wachovia, the debtor's primary secured creditor, characterized its position as "somewhat neutral." Wachovia did not advocate disturbing the sale by any means other than carving out the Day Street property by consent. Wachovia – not the estate – would be the direct beneficiary of an increase in the purchase price due to its "underwater" position.[6] Indeed, the property at issue is property of the estate only to the extent of the debtor's leasehold interest.

The only parties objecting to the sale are Properties and Loeb. Neither is objecting out of any concern for the estate's interest. Loeb is not objecting to the sale in his capacity as president of the debtor. Loeb stands to benefit by the reduction of his guaranty obligation.

Hilco has not consented to carve out the Day Street property. Indeed, Hilco stated that the $4 million purchase price was not allocated between the two properties and that the sale cannot be disturbed without rebidding or somehow renegotiating the price.

---

[6] The court acknowledges that, to the extent Wachovia's secured claim is paid, the liability of the debtor to Wachovia is reduced. However, this is a liquidating chapter 11, and the debtor has stopped operating its business.

For the above reasons, the court concludes that there are no compelling equities that outweigh the interests in the finality of the auction of Alatex and Day Street properties. The objection to the sale filed by Properties and Loeb will be overruled by separate order.

Done this 18th day of May, 2006.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
  Von G. Memory, Attorney for Debtor
  Lee R. Benton, Attorney for Piknik Properties and Herman Loeb, Jr.
  Richard P. Carmody, Attorney for Hilco
  Jason D. Woodard, Attorney for Wachovia Bank
  J. Rudy Freeman, Attorney for Creditors' Committee
  Walter R. Byars, Jr., Attorney for City of Montgomery